IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


STANLEY LORENZO WILLIAMS,    )
                             )
            Petitioner,      )
                             )
     v.                      )    1:07CV757
                             )
ROBERT W. SMITH, Supt., et al., )
                             )
            Respondents.     )


**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION**
**OF MAGISTRATE JUDGE ELIASON**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The full history underlying this case is long and complicated, with numerous filings by Petitioner. However, the relevant early history of the case was summarized in an unpublished opinion from the North Carolina Court of Appeals as follows:

> Pursuant to a plea arrangement, Stanley Lorenzo Williams (defendant) originally pled guilty on 24 March 1998 to three offenses (97 CRS 9849, 97 CRS 10692 and 98 CRS 2037) and admitted his habitual felon status (98 CRS 2930). The State then dismissed eight charges (97 CRS 9609-13, 97 CRS 9850, 97 CRS 10693 and 98 CR 2023) and two habitual felon indictments (97 CRS 10872-73). The trial court consolidated the offenses for judgment and sentenced defendant as an habitual felon to a mitigated term of 84 to 110 months imprisonment. Defendant subsequently filed a motion for appropriate relief seeking to have his guilty plea vacated as involuntary. In an order entered 19 November 1998, the trial court vacated the guilty plea and reinstated all charges pending against defendant including those which had been dismissed as a consequence of the guilty plea.
>
> Following a jury trial, defendant was convicted on 26 May 1999 of two offenses (97 CRS 9849-50) and found to be an habitual felon (97 CRS 10872). In 97 CRS 9849, the trial court sentenced defendant as an habitual felon to a term

> of 116 to 149 months imprisonment. The trial court also
> sentenced defendant as an habitual felon in 97 CRS 9850
> to a second consecutive term of 116 to 149 months
> imprisonment. Defendant appealed, and this Court found no
> error on appeal. State v. Williams, 143 N.C. App. 570,
> 547 S.E.2d 860 (2001) (unpublished).
>
> On 17 August 2005, defendant filed a motion for
> appropriate relief with the trial court, which was denied
> on 21 September 2005. Defendant then filed a petition for
> writ of certiorari with this Court on 28 September 2005.
> On 18 October 2005, this Court granted defendant's
> petition for writ of certiorari, allowing defendant to
> present the issue as to whether his sentences are in
> violation of N.C. Gen. Stat. § 15A-1335.

State v. Williams, No. COA06-240, 2006 WL 3490572, *1 (N.C. App. Dec 05, 2006)(unpublished).

Later in the same decision, the North Carolina Court of Appeals determined that Petitioner's sentence of 116 to 149 months in case 97 CRS 9850 did not violate N.C. Gen. Stat. § 15A-1335, but that the sentence in 97 CRS 9849 did. The statute generally prevents a defendant who has successfully challenged a sentence or conviction from later being resentenced more harshly. Accordingly, the state court of appeals remanded the case for resentencing in 97 CRS 9849 only. There were no specific instructions in the remand, only a statement that the trial court erred by imposing a sentence greater than Petitioner's original 84 to 110 month sentence.

Following the remand, Petitioner's case returned to the trial court, but did not proceed smoothly. On December 20, 2006, an order was entered which resentenced Petitioner to 70 to 93 months of imprisonment, with credit for any time served which was related to the case. (Docket No. 7, Ex. 10.) However, on December 22, 2006, the judge who had entered the order realized that he had not

-2-

had the necessary jurisdiction to enter it because the mandate from the North Carolina Court of Appeals had not yet become effective. He vacated the order entered on December 20, 2006. (<u>Id.</u> Ex. 11.) Petitioner, being aware only of the first order, filed a motion for appropriate relief and a petition for habeas corpus contesting the first order. (<u>Id.</u> Ex. 12.) The motion for appropriate relief was denied for being moot, but the habeas petition was granted so that Petitioner's case was set for a resentencing hearing and counsel was appointed to represent him. (<u>Id.</u> Ex. 13.)

Petitioner's resentencing hearing was held on February 8, 2007 and Petitioner was sentenced to 14 to 17 months of imprisonment. The judgment reflects that Petitioner was sentenced in the presumptive range for a Class I felon with a criminal record level of V. (<u>Id.</u> Ex. 15.) For some reason, he was not sentenced as a habitual felon even though his habitual felon conviction for 97 CRS 9849 had been upheld by the North Carolina Court of Appeals. Petitioner did not file a direct appeal of the greatly lowered sentence, but did make several attempts at collateral relief in the state courts. When these failed, he brought the current habeas petition in this Court. Respondents now seek to have the petition denied.

### **<u>Petitioner's Claims</u>**

Petitioner raises four claims for relief in his habeas petition. The first contends that his sentence was improperly calculated under state law because the record level based on his criminal history should have been Level III instead of Level V, as

-3-

is reflected on the judgment.  At other points in the pleadings, Petitioner also claims that the sentence of 14 to 17 months is too high even for Level V.  His second claim for relief asserts that his due process rights were violated because he was resentenced twice.  Petitioner's third claim alleges that his attorney provided ineffective assistance of counsel by not properly investigating the case, studying the applicable laws, objecting to the sentence rendered, or filing a direct appeal.  Finally, he asserts that he was improperly denied his right to an appeal.

## Legal Standards

If the Court finds that Petitioner's claims were adjudicated by the state courts on their merits, it must then apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to Petitioner's claims.  That statute states that habeas relief cannot be granted in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts.  A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362 (2000).  A state decision "involves an unreasonable application" of Supreme Court law "if the

state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 405-406. "Unreasonable" is not the same as "incorrect" or "erroneous" and the reasonableness of the state court's decision must be judged from an objective, rather than subjective, standpoint. Id. at 409-411. A holding is not reasonable simply because precedent written by one of the Nation's jurists agrees with it. Id. at 410. As for questions of fact, state court findings of fact are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A review of the record generated in the state courts reveals that some of the claims raised in the habeas petition were presented to the state courts, while it appears that others were not. Further, to the extent that claims were presented, they tend to have been presented in forms that vary to some degree from the claims presented here and, thus, they would be unexhausted and subject to dismissal. 28 U.S.C. § 2254(b). For this reason, it is nearly impossible to determine whether or not the AEDPA standards apply to the claims raised in the current petition. Still, this does not present a problem because the result in this case is the same no matter what standard of review is used.

## Discussion

### Claim One

Petitioner's first claim for relief states that his resentencing was flawed because he was resentenced as a Class I

-5-

felon with a criminal history level of V.  He maintains that his criminal history level should have been III.  At other points in the mass of pleadings before the Court he states that the sentence he received, 14 to 17 months, is not an appropriate sentence for a Class I felony at all under North Carolina's structured sentencing laws.

Because both constructions of Petitioner's claim allege errors of state law, he faces a high hurdle. "'[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.'"  Thomas v. Taylor, 170 F.3d 466 (4th Cir. 1999)(quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).  There is no habeas relief for violations of state law unless the error rises to the level of a violation of federal law.  Id.  A state procedural error, including a failure to follow state sentencing procedure, does not qualify for relief unless there was "'a fundamental defect which inherently results in a complete miscarriage of justice,'" or there are "'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'"  Short v. Garrison, 678 F.2d 364, 369 (4th Cir. 1982)(quoting Hailey v. Dorsey, 580 F.2d 112, 115 (4th Cir. 1978) and finding that a failure to make a finding required by North Carolina sentencing law did not provide a ground for habeas relief).

Here, it appears that Petitioner's record level was correctly calculated under state law. At his earlier sentencings, his record level had been III, but the felonies that supported his habitual felon conviction were not counted. At his last sentencing, he was not treated as a habitual felon, allowing those felonies to be included. This apparently increased his criminal history to Level V. On the other hand, it does appear that the sentencing judge at Petitioner's last sentencing did make a mistake in calculating the sentence under N.C. Gen. Stat. § 15A-1340.17. The judgment in the case reflects that Petitioner was sentenced in the presumptive range as a Class I felon with a record level of V. However, section 15A-1340.17 states that the possible minimum sentence for such a person must fall in a range of 7 to 9 months. This results in a corresponding maximum sentencing range of 9 to 11 months. The harshest possible sentence then would be 9 to 11 months for a defendant with a record level of V who was sentenced in the presumptive range for a Class I felony. Petitioner was sentenced to 14 to 17 months.

The reason for the apparent error at Petitioner's latest resentencing is not clear. However, it is worth noting that a sentence of 14 to 17 months would fall squarely in the range for the next class above a Class I, that is a Class H offender with a record level of V who was sentenced in the presumptive range. This suggests that a simple misreading of the sentencing chart in section 15A-1340.17 may have occurred.

-7-

Case 1:07-cv-00757-TDS-WWD   Document 28   Filed 08/13/08   Page 7 of 19

Despite the possible misreading of the sentencing chart, Petitioner is not entitled to relief in this Court. This is because his sentence of 14 to 17 months was still far below the sentence actually allowed or required by North Carolina law. Therefore, no miscarriage of justice occurred.

Ordinarily, sentences for convicted felons in North Carolina are determined under section 15A-1340.17. See N.C. Gen. Stat. § 15A-1340.13(generally requiring a minimum and maximum term of imprisonment to be calculated under section 15A-1340.17). However, it is important to remember that Petitioner was not a defendant being sentenced for the first time. Instead, he was being sentenced following a remand based on a violation of N.C. Gen. Stat. § 15A-1335. That statute only states that a defendant who has succeeded in having his original sentence overturned on direct or collateral review cannot be given "a new sentence for the same offense, or for a different offense based on the same conduct, which is more severe than the prior sentence less the portion of the prior sentence previously served."

The North Carolina Supreme Court has explained the interplay between N.C. Gen. Stat. §§ 15A-1340.13, 15A-1340.17, and 15A-1335. Section 15A-1340.13(b) does generally require that a minimum term of imprisonment be calculated under section 15A-1340.17. However, there is an exception where "applicable statutes require or authorize another minimum sentence of imprisonment." N.C. Gen. Stat. § 15A-1340.13(b). Section 15A-1335 is just such a statute. State v. Wagner, 356 N.C. 599, 602-603, 572 S.E.2d 777, 779-80

(2002). Whatever minimum sentence section 15A-1340.17 might indicate is proper on resentencing, section 15A-1335 trumps it and requires the minimum sentence be not greater than the minimum sentence received at the original sentencing, less any time served on that sentence. That is, N.C. Gen. Stat. § 15A-1335 does not require a new or resentencing hearing at all, only a reduction in the judgment to meet the requirements of the statute. See n.4, infra, and the federal cases cited.

In the present case, the statutory system described in Wagner did not require that Petitioner not be treated as a habitual felon at sentencing. Instead, it mandated only that Petitioner's minimum sentence not exceed his original minimum sentence of 84 months. The 14-month minimum that Petitioner did receive is nearly six years below what was allowed and perhaps required under Wagner and North Carolina statutes.

The reasons for the drastic reduction in Petitioner's sentence are not at all clear because the transcript from the resentencing is not present in the record. All that is clear is that the judge who resentenced Petitioner disregarded the habitual felon conviction and sentenced only on the underlying charge of possession of cocaine. Respondents attribute this to the fact that using the habitual felon conviction to enhance Petitioner's sentence would have called for a sentence higher than that allowed by section 15A-1335. However, that reasoning begs the question. The remand by the court of appeals pursuant to N.C. Gen. Stat. § 15A-1335 did not authorize or require a new sentencing hearing, but

rather only that a new judgment be entered reducing the sentence as required by that statute. See n.4, infra, and the federal cases cited. This is particularly so given that the opinion remanding Petitioner's case did not in any way affect the validity of Petitioner's habitual felon conviction or suggest that it should be disregarded at resentencing.[1]

In the end, whatever led to the 14 to 17 month sentence, it is abundantly clear that the sentence did not violate Petitioner's federal constitutional rights. The sentence was far less than the 84 to 110 month sentence allowed by state law and appears to be the result of some level of confusion at the resentencing hearing.[2] Far from harming Petitioner, this confusion greatly aided him. It is not possible that his federal rights were harmed in any way. His first claim does not state a claim for federal relief and should be denied accordingly.

---

[1] It may be noted along these lines that the judge who first resentenced Petitioner after the remand did not conclude that the habitual felon conviction should be ignored. He sentenced Petitioner to 70 to 93 months of imprisonment while specifically noting that he was, with the State's consent, sentencing Petitioner to the lowest possible sentence in the mitigated range based on his habitual felon conviction. (Docket No. 7, Ex. 10.) But for the extremely fortuitous occurrence that the order later had to be vacated because it was entered too early, 70 to 93 months, not 14 to 17 months, would now be Petitioner's sentence.

Petitioner explains in his state court filings that the judge at his final resentencing stated "'I can't give him 84-110 because that would be contrary to, 14-17 I can't do that either, What is it that they want me to do?  I tell you what I'm going to do I give him 14-17 months which can be consolidated'" [sic]. (Docket No. 7, Ex. 16, Amendments to Motion for Appropriate Relief at 3.) Whatever actually occurred, it would seem apparent that there was much confusion at the resentencing.

[2] Petitioner is a frequent and long-time litigant in this Court and the state courts. Petitioner's own actions--making multiple voluminous filings and constantly changing his claims and arguments--often create confusion and invite error.

**Claim Two**

Petitioner's second claim for relief states that his resentencing proceedings violated his right to due process. However, the exact nature of the alleged violation is difficult to decipher. In his petition, Petitioner states that the two separate resentencings he received upon the return of his case to the Cabarrus County Superior Court "created a Judicial error in the process [ ] which prevents the resentencing from running its due course, to wit, N.C. Dept. of Correction cannot process the resentence." (Docket No. 2. at 7-8.) The memorandum supporting the petition raises different points, all apparently in support of this claim. At times it seems to argue that the state court's declaration that the premature resentencing order was null and void may have ended the case and invalidated the later resentencing. At other times, it appears to claim that the two orders merely confused the North Carolina Department of Correction so that it cannot properly process the final sentence. The memorandum also alleges that the Department of Correction realizes that the first resentencing order was vacated and is treating it as such, but that it refuses to remove it from its records. Petitioner further appears to argue that the 14 to 17 month sentence should be consolidated with his sentences in other cases and that the two resentencings violate the constitutional prohibition on double jeopardy.

None of Petitioner's allegations, however they are construed, merit relief. Although the first resentencing order may have been

-11-

entered prematurely, it was quickly vacated and did not harm Petitioner. Nor did the vacating of that order somehow end the case or punish Petitioner twice. The order vacating the first resentencing order states only that the resentencing order was rendered null and void, not that the case was dismissed. (Docket No. 7, Ex. 11.) It is clear that Petitioner is only subject to the 14 to 17 month sentence and not the longer 70 to 93 month sentence announced in the vacated resentencing order.

As for the handling of the orders by the North Carolina Department of Correction, even Petitioner's pleadings admit that the Department treats his earlier sentences in this case as being vacated.[3] Petitioner apparently wishes that all record of their existence be wiped from the Department's records, but he has not shown any reason why this would be necessary. Nor has he shown that such relief is proper in a § 2254 habeas corpus proceeding. Finally, as to consolidation with his other sentences, the judgment containing the 14 to 17 month sentence explicitly states that Petitioner's sentence is to be served consecutively, not concurrently. (Id. Ex. 15.) He does not show why this would not be proper. All of Petitioner's iterations of his second claim for relief are without merit and should be denied.

---

[3]Records supplied by Respondents confirm this fact. The records indicate that only the 14 to 17 month sentence is being treated as a valid sentence in 97 CRS 9849. (Docket No. 7, Ex. 33.)

-12-

**Claim Three**

Petitioner's third claim for relief is that he was denied effective assistance of counsel because his attorney did not investigate the case, did not object to his unlawful sentence, and did not give notice of appeal. An ineffective assistance of counsel claim is evaluated by using a two-part test:

> In order to establish an ineffective assistance of counsel claim . . . [a petitioner is] required to establish that his "counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms," [citing Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)], and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694, 104 S.Ct. 2052. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687, 104 S.Ct. 2052.
>
> In determining whether counsel's performance was deficient, "[i]t is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689, 104 S.Ct. 2052. Hence, "court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks omitted).
>
> Similarly, in evaluating whether the defendant has shown actual prejudice from any such deficient performance, it is insufficient for the defendant "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." Id. at 693, 104 S.Ct. 2052. Rather, a "reasonable probability" that the result would have been different requires "a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. When challenging a conviction, "the question is whether there is a

>     reasonable probability that, absent the errors, the
>     factfinder would have had a reasonable doubt respecting
>     guilt." Id. at 695, 104 S.Ct. 2052.  And, "[w]hen a
>     defendant challenges a death sentence . . ., the question
>     is whether there is a reasonable probability that, absent
>     the errors, the sentencer . . . would have concluded that
>     the balance of aggravating and mitigating circumstances
>     did not warrant death." Id.

Fisher v. Lee, 215 F.3d 438, 446-447 (4th Cir. 2000).  A claim for ineffective assistance cannot advance based on unsupported, conclusory allegations alone.  Nickerson v. Lee, 971 F.2d 1125 (4th Cir. 1992).

Here, a portion of Petitioner's ineffective assistance of counsel claim is conclusory.  Petitioner points to nothing that counsel failed to investigate which would have helped his case.  His other contentions also fail.  As discussed in conjunction with Petitioner's first and second claims for relief, his sentence was not unlawful in a way that harmed him.  Instead, it was far below what North Carolina law allowed and, perhaps, required.  This worked in Petitioner's favor.  There was no reason for his attorney to object, any failure to object did not harm Petitioner, and any objection or appeal may have, in fact, brought on an adverse correction from the court of appeals.  Likewise, his attorney would have had no reason to file a notice of appeal unless Petitioner instructed him to do so.  Petitioner does not claim that he so instructed his attorney. Finally, given the fact that Petitioner's federal rights were not violated by his resentencing, it is difficult to see how actions by counsel could have affected his federal constitutional rights.  All of his ineffective assistance

of counsel allegations fail and his third claim for relief should be denied.

### Claim Four

Petitioner's fourth and final claim for relief alleges that he was denied his right to an appeal. He begins the claim by admitting that no notice of appeal was entered in open court. However, he claims that he later filed a request for an appeal, that it was "treated as a motion and denied by both courts," and that the denials violated an unidentified "state rule" which guarantees a right to an appeal when an unlawful sentence is imposed. (Docket No. 2 at 11.)

Again, Petitioner's claim is difficult to even understand. Initially, it should be noted that Petitioner makes no claim that a timely notice of appeal was filed in the state courts. He admits in his claim that no notice was given in open court and, as discussed above in the section of this Recommendation addressing his third claim for relief, states that his attorney never filed such a notice. Respondents apparently admit that Petitioner had a right to appeal established under state law,[4] but he simply did not exercise that right. See N.C. Gen. Stat. § 15A-1444(a1).

---

[4] It is not clear that Petitioner had a right to a resentencing hearing, a right to an attorney for such a hearing, or a right to appeal. The remand by the state court of appeals only required the trial judge to enter a judgment pursuant to N.C. Gen. Stat. § 15A-1335 reinstating the original 84 to 110 month sentence as to 97 CRS 9849. See, e.g., United States v. Arrous, 320 F.3d 355 (2d Cir. 2003); United States v. Tamayo, 80 F.3d 1514 (11th Cir. 1996); United States v. Jackson, 923 F.2d 1494 (11th Cir. 1991); United States v. Saenz, 429 F. Supp. 2d 1109 (N.D. Iowa 2006). The fact that the state court trial judge ignored the mandate of the state court of appeals and gave Petitioner a very much reduced sentence would not seem to be grounds for any appeal. Certainly, his federal rights were not impinged upon by the unusual sentencing in any meaningful manner.

-15-

The later requests for an appeal to which Petitioner refers are apparently a wide array of motions he filed in the months following his resentencing. A review of those motions reveals that they seek Petitioner's release, that they are attempts at forms of collateral or other relief that does not constitute direct review, and that they were treated as such and denied by the state courts. (Docket No. 7, Ex. 16-30.)

Overall, the record demonstrates that Petitioner did not seek timely or proper direct review of his resentencing. He could not have been denied what he never sought. As for general access to the courts, Petitioner has both used and abused his access to the state and federal courts for years. His multitude of claims has been thoroughly adjudicated, some of them many times and more than once with favorable results for Petitioner. In fact, all of this is true in the present case. Petitioner cannot point to any specific or general denial of access to the courts. His fourth claim for relief should be denied.

## **Other Pending Motions**

In addition to Respondents' motion for summary judgment, there are fourteen other motions which are also pending in the case. They are: Petitioner's request to have a transcript of his sentencing hearing prepared (Docket No. 9), Petitioner's motion to strike Respondents' answer (Docket No. 10), Petitioner's request to have his motion for a transcript presented for a ruling (Docket No. 11), a second such request (Docket No. 12), Petitioner's motion to expand the record to include documents from the North Carolina

Department of Correction (Docket No. 13), Petitioner's motion to stay or enlarge the period for him to file a response brief (Docket No. 14), Petitioner's request for a prompt ruling on his motion for a transcript and his motion to stay (Docket No. 15), Petitioner's request to conduct discovery (Docket No. 16), Petitioner's motion for immediate habeas relief or to show cause why that relief should not be granted (Docket No. 17), Petitioner's motion for a default judgment (Docket No. 18), Petitioner's motion to stay execution of his sentence (Docket No. 19), Petitioner's motion for matters to be put to rest (Docket No. 22), Petitioner's motion for a change of venue (Docket No. 26), and Petitioner's motion to appoint counsel (Docket No. 27).

A number of Petitioner's motions deal with procuring the transcript of Petitioner's resentencing hearing. For the reasons discussed in association with Petitioner's first claim for relief, that transcript could not affect the result in the case. Whatever led to the sentence he received, it was so far below the sentence allowed under state law that his federal constitutional rights could not have been violated. Therefore, his motions dealing with the transcript (Docket Nos. 9, 11, 12) are denied. Similarly, the Department of Correction documents he seeks to add and the discovery he wants to conduct would also not affect the case. His motions seeking those things (Docket Nos. 13, 16) are denied.

The recommendation that Respondents' motion for summary judgment be granted, as well as other events in the case, moot most of the remaining motions. Petitioner did file a response,

-17-

therefore his motion to stay and enlarge the time for him to file (Docket No. 14) is moot. The same is true for his request to rule on the motion to stay (Docket No. 15). Because Petitioner's claims do not have merit or will be decided by a ruling on the recommendation, he is not entitled to a separate order for habeas relief, a default judgment, or a stay of his sentence (Docket Nos. 17, 18, 19). Matters are being put to rest here, meaning that there is no need to change venue to receive a resolution of the case. Petitioner's motions to put matters to rest (Docket No. 22) and change venue (Docket No. 27) are denied. Also, there is no need for counsel now that a decision has been made following Petitioner's own thorough pursuit of his claims. His motion for counsel (Docket No. 26) is denied. Finally, there is nothing wrong with Respondents' answer to the habeas petition, so Petitioner's motion to strike the answer (Docket No. 10) is denied as well.

For the reasons set out above,

**IT IS THEREFORE ORDERED** that Petitioner's request to have a transcript of his sentencing hearing prepared (Docket No. 9), Petitioner's motion to strike Respondents' answer (Docket No. 10), Petitioner's request to have his motion for a transcript presented for a ruling (Docket No. 11), a second such request (Docket No. 12), Petitioner's motion to expand the record to include documents from the North Carolina Department of Correction (Docket No. 13), Petitioner's motion to stay or enlarge the period for him to file a response brief (Docket No. 14), Petitioner's request for a prompt ruling on his motion for a transcript and his motion to stay

-18-

Case 1:07-cv-00757-TDS-WWD   Document 28   Filed 08/13/08   Page 18 of 19

(Docket No. 15), Petitioner's request to conduct discovery (Docket No. 16), Petitioner's motion for immediate habeas relief or to show cause why that relief should not be granted (Docket No. 17), Petitioner's motion for a default judgment (Docket No. 18), Petitioner's motion to stay execution of his sentence (Docket No. 19), Petitioner's motion for matters to be put to rest (Docket No. 22), Petitioner's motion for a change of venue (Docket No. 26), and Petitioner's motion to appoint counsel (Docket No. 27) are all denied.

**IT IS RECOMMENDED** that Respondents' motion for summary judgment (Docket No. 6) be granted, that the habeas corpus petition (Docket No. 2) be denied, and that Judgment be entered dismissing this action.

_____
**United States Magistrate Judge**

August 13, 2008